UNITED STATES of America,
Plaintiff-Appellee,

v.

Jimmy Dale WOOD,
Defendant-Appellant.

No. 82–1162.

United States Court of Appeals,
Tenth Circuit.

Dec. 6, 1982.

See also D.C., 550 F.Supp. 722.

Richard L. Denney, Norman, Okl. (Williams, Weldon & Denney, Norman, Okl., were with him on brief), for defendant-appellant.

Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., Oklahoma City, Okl., was with him on brief), for plaintiff-appellee.

Before DOYLE and McKAY, Circuit Judges, and TEMPLAR,* Senior District Judge.

TEMPLAR, Senior District Judge.

The defendant-appellant, Jimmy Dale Wood, was indicted and convicted of five drug-related offenses: conspiracy to distribute LSD, two counts of knowing and intentional use of a communicational facility in the unlawful distribution of a controlled substance, unlawful distribution of LSD, and possession with intent to distribute LSD. On appeal, he argues that the trial court should not have admitted the LSD into evidence because of gaps in the chain of custody and because the search warrant application did not set out bases for determining the informant's reliability. He also argues that tape recordings of the drug transactions should not have been admitted because the foundation for them was inadequate and because large portions of them are unintelligible. He also argues that the trial court erred in limiting the scope of cross-examination of the informants by defense counsel.

As a result of the undercover operation by Officers Kuchta and Hill, Charles Sumner was arrested after selling LSD (Exhibit No. 1) to Officer Kuchta. Sumner agreed to assist the police by testifying against his supplier, the defendant.

At 3:00 p.m., on August 14, 1981, Gary Morgan, a heavy user and dealer of drugs, telephoned for the defendant and eventually set up a sale at an Oklahoma City motel. The telephone calls, made at a pay phone, were recorded by the police (See Exhibits Nos. 2 and 3).

At 6:30 p.m., Morgan, wearing a body microphone, went to a motel room where he purchased 100 dosage units of blue microdot LSD (Exhibit No. 5) for $250.00 in marked money. The LSD was given to Officer Hill, who obtained a search warrant for the defendant's motel room. The officers had the defendant called to the front desk and he was arrested outside his motel room. His room was searched pursuant to the search warrant, and approximately 2700 dosage units of LSD (Exhibit No. 6) were found in a pair of athletic socks in a clothes hamper or basket. In the meantime, the defendant was informed of his rights and was searched. Twenty-two tablets of LSD (Exhibit No. 7) were found in his pants pocket.

At trial, the defendant moved to suppress all these exhibits, which motion the trial court denied. The jury returned a verdict of guilty to all five counts.

I

The defendant argues that the trial court should not have admitted into evidence Exhibits 1, 5, 6, and 7 which were various amounts of LSD sold by him or found pursuant to a search of his motel room and person. The defendant claims that the chain of custody is incomplete and that there is therefore no assurance that the exhibits have not been tampered with or misidentified.

---

* Honorable George Templar, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

Exhibit No. 1 was offered as 1,000 dosage units of blue micro-dot LSD which the defendant distributed to Charles Sumner, an unindicted co-conspirator, and which Sumner resold to Jim Kuchta, an undercover police detective. Kuchta placed the substance in a sealed envelope, signed and identified it, and placed it in the narcotics bin at the police department's forensic laboratory.

Exhibit No. 5 was offered as 100 dosage units of LSD which Gary Morgan, another informant, purchased from the defendant and which he furnished to Officer Hill. Exhibit No. 6 was 2700 tablets of LSD found in the defendant's motel room. Exhibit No. 7 was 22 tablets of LSD found in the defendant's pants pocket. Officer Hill placed all three exhibits in a narcotics locker at the Oklahoma City Police Department.

Thomas Kupiec, a forensic chemist for the Oklahoma City Police Department, removed the exhibits for analysis and had custody of them for over two months. On October 23, 1981, after completing his analyses, he turned over the exhibits to Mel Ashton of the Drug Enforcement Administration. Three days later, Ashton brought the exhibits to the trial, and they were admitted into evidence over the defendant's objection. Officers Hill and Kuchta and the forensic chemist testified as to the custody and identity of the exhibits; however, there was no testimony as to the procedures used to safeguard the exhibits while they were in the possession of the DEA. The envelopes containing these exhibits, which had been sealed after the analyses were completed, had been opened before they reached the courtroom.

■ If, upon considering the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with it, the trial judge deems the article to be in substantially the same condition as when the crime was committed, he may admit it into evidence. We will not overturn his determination that the showing as to identification and nature is sufficient to warrant receiving an article into evidence, except for clear abuse of discretion. *United States v. Gagnon*, 635 F.2d 766, 770 (10th Cir.1980). Absent a clear abuse of discretion, deficiencies in the chain of custody go to the weight of the evidence and not to its admissibility. *See, United States v. Drumright*, 534 F.2d 1383, 1385 (10th Cir.1976). *Cf., United States v. Luna*, 585 F.2d 1, 6 (1st Cir.1978) (court first determines whether there is reasonable probability that evidence has not been materially altered; if not, it is admitted).

■ Here, the court admitted the exhibits based on the chemist's and officers' identifications, by their initials and otherwise, and based on the complete chain of custody from the officers to the chemist. The court found that there was no indication of tampering or alteration of the exhibits. Absent some showing by the defendant that the exhibits have been tampered with, it will not be presumed that the investigators who had custody of them would do so. *O'Quinn v. United States*, 411 F.2d 78, 80 (10th Cir. 1969). *See, United States v. Gagnon, supra* (marijuana stored in pickup overnight in the admittedly less than impregnable garage of the sheriff was admitted although an intrusion by pranksters was possible).

■ We consider it significant that there were no breaks in the chain of custody prior to the analyses by the forensic chemist. Thus, the substance which the chemist determined was LSD was the same substance which the defendant had distributed to Sumner and Morgan and the same substance which was found in his motel room and on his person. Any contention that the substance was not LSD attacks the credibility of the chemist and of the officers and thus affects the weight, not the admissibility, of the evidence. *See, United States v. Kaiser*, 660 F.2d 724, 733–734 (9th Cir. 1981) (although there were gaps in chain of custody, drugs were admitted when identified by chemist and investigating agents). There was no error in admitting these exhibits.

## II

■ The defendant next argues that the admission of the tape recorded conversations (Exhibits Nos. 2, 3, and 4) was error

because the tapes were inaudible and unintelligible and because there was no proper foundation laid for their admission. Unless the unintelligible portions are so substantial as to render the recording, as a whole, untrustworthy, it may be admitted in the sound discretion of a trial judge. *United States v. Brinklow,* 560 F.2d 1008, 1011 (10th Cir.1977).

■ Exhibits Nos. 2 and 3, the tape-recorded telephone conversations, are audible and intelligible throughout. The equipment was functioning so well that it even picked up the dial tone, ringing, and the tones produced by the buttons on the touch-tone telephone. Exhibit No. 4 was recorded using a body microphone, concealed on the informant Morgan. The microphone picked up background noise such as traffic and a television, but the conversation was not drowned out by that background noise. It is not difficult to hear that a drug sale is being transacted, that Morgan will pay $250 and can quickly sell enough to pay the rest of the price, and that the defendant is nervous about being busted. The trial judge did not abuse his discretion in determining that the tape recordings were audible and intelligible. *Cf., Monroe v. United States,* 234 F.2d 49, 55 (D.C.Cir.1955) (partial inaudibility is no more valid reason for excluding recorded conversations than is failure of a personal witness to overhear an entire conversation).

■ The defendant insists that the trial court must comply with the requirements of *United States v. McMillan,* 508 F.2d 101, 104 (5th Cir.1974), before a proper foundation for the tapes can be completed. From the trial transcripts and the tape themselves, we note that most of the qualifications in *McMillan* were or could have been satisfied. From the high quality of the recordings, we conclude that the recording devices were competently operated and were capable of recording the conversations. Morgan identified the voices on the tapes and was familiar with the defendant's voice from prior dealings. The defendant has not suggested that the tapes have been altered in any way, and the government is not required to eliminate absolutely the possibility of alteration. *United States v. Buz-*

*zard,* 540 F.2d 1383, 1386–1387 (10th Cir. 1976). Where there is sufficient independent evidence of the accuracy of the tape recordings to ensure their reliability, we will not disturb the trial court's decision to admit them, even though the government, at the time the tapes were admitted, had not formally carried its burden found in *United States v. Carter,* 613 F.2d 256, 261–262 (10th Cir.1979). *See, United States v. Hughes,* 658 F.2d 317, 322 (5th Cir.1981), *cert. den.,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). *See also, United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir. 1979).

■ We conclude that the trial court did not err in admitting these tape recordings as Exhibits Nos. 2, 3, and 4.

### III

■ The defendant challenges the sufficiency of the affidavit for the search warrant because the affiant, Officer Hill, allegedly did not establish the facts from which he concluded that the informant was reliable. The magistrate must be informed of the underlying circumstances and of the credibility of the informant. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The pertinent portion of the challenged affidavit relates the following information:

> On 8–14–81 based on the above information the affiant supervised a controlled buy of the 100 lot of LSD from the subject in room # 259 at the Southgate Inn. The confidential informant was searched and found to be clean of any contraband and was forwarded $250 of marked OCPD evidence money. The confidential informant was then followed and surveilled to the room and from the room immediately following the transaction. The informant was stopped and re-searched following the transaction at which time this officer recovered a 100 count lot of blue micro-dot LSD found to be in a clear plastic baggie.

A strong argument can be made that the above is sufficient to establish probable cause because it is reasonable to believe that a person known to be selling illegal

drugs would store them at his residence. *See, e.g., United States v. Picariello,* 568 F.2d 222 (1st Cir.1978); *United States v. Scott,* 555 F.2d 522 (5th Cir.1977); *Aron v. United States,* 382 F.2d 965 (8th Cir.1967); *United States v. Spearman,* 532 F.2d 132 (9th Cir.1976). In addition, the affidavit provides some indication of the informant's reliability:

> The informant stated that while in the room he observed a large quantity of blue micro-dot of LSD. This reliable confidential informant having been known to this officer for approximately the last 30 days. This informant having provided information to this officer during this time period that this officer has found to be true through independent investigation by this officer.

 In judging probable cause, issuing magistrates are not to be confined by niggardly limitations or by restrictions on their use of common sense. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969). The magistrate is not required to construe the affidavit in a hypertechnical fashion. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

 The officer established the credibility of the informant from personal knowledge and from prior experiences. *See, United States v. Baca,* 480 F.2d 199, 203 (10th Cir.1973). Unlike the affiant in *United States v. Hittle,* 575 F.2d 799 (10th Cir.1978), this affiant had observed the circumstances during which the informant said he observed the LSD. He also observed the informant return from that place with some of the LSD. These indicia of reliability, although not establishing beyond a reasonable doubt that LSD would be found, do suggest, when coupled with the reasonable inference that a person selling LSD would store it at his residence, probable cause to believe that LSD would be found there. Although this court will not abdicate its reviewing function, the magistrate is entitled to substantial deference in his determination of probable cause, a determination with which we agree. *See, Edmondson v. United States,* 402 F.2d 809, 812 (10th Cir.1968).

## IV

As a final matter, the defendant argues that the trial court improperly limited his cross-examination of Morgan and Sumner, the informants. The defendant claims that he was unable to get a definite answer from either of them when he asked what deals they had made regarding their testimony at trial. He also claims that his counsel was not allowed to develop a line of questioning which would have shown that Morgan had an improper motive for testifying against him. This argument is not supported by the record because defense counsel did elicit testimony as to deals between the police and the witnesses.

▪ Any reversal of a conviction on the basis of undue limitation upon cross-examination must demonstrate a denial of a due process right of confrontation as guaranteed by the Sixth Amendment or represent an abuse of discretion by the trial court in limiting cross-examination. *United States v. Walton,* 552 F.2d 1354, 1364 (10th Cir.1977). In cross-examining Sumner, defense counsel elicited testimony of Sumner's prior conviction for auto theft, habitual usage and sale of illegal drugs, and most importantly, his arrest on August 13 for sale of 1,000 dosage units of LSD and his agreement to cooperate with the authorities in hopes of not going to prison. After the government had shown that Morgan, its other "star witness", had five prior convictions, was a habitual user and seller of illegal drugs, had agreed to cooperate with the Oklahoma City Police Department, and had been paid approximately $100.00 for information; defense counsel elicited the additional testimony that Morgan was enamoured with a young lady whom the defendant had been dating and that charges against Morgan would be dropped if he cooperated with the police. The defendant was able, then, to demonstrate the inducements which these witnesses had for testifying. We find no violation of the right to confrontation.

 Furthermore, we find no abuse of discretion by the trial court in limiting cross-examination. This is because the only limitation on cross-examination of these

witnesses was the sustained objections to irrelevant, repetitive, and argumentative questions. It is proper to restrict cross-examination to avoid repetition and to prevent irrelevant material from entering the case. *United States v. Walton, supra.* An argumentative question can be rephrased so that the same testimony, if relevant, can be elicited in a nonobjectionable manner. We find no abuse of discretion herein.

There being no error, we affirm.