UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald H. SKIPWORTH,
Defendant-Appellant.

No. 81–1768.

United States Court of Appeals,
Tenth Circuit.

Jan. 11, 1983.

---

Susie Pritchett, Oklahoma City, Okl. (John E. Green, Acting U.S. Atty., William S. Price, Asst. U.S. Atty., Oklahoma City, Okl., with her on the brief), for plaintiff-appellee.

Garland Bloodworth, Oklahoma City, Okl., for defendant-appellant.

Before SETH, SEYMOUR and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

A 26-count indictment charged defendant-appellant Skipworth with mail fraud in violation of 18 U.S.C. § 1341, Counts I to XXIII inclusive, and income tax evasion for the years 1976, 1977, and 1978, Counts XXIV–XXVI. The jury found him guilty on all counts. He appeals from the judgment of sentence. We affirm.

The indictment was based on defendant's 1976–1978 participation in a scheme to defraud the counties of Stephens, Counts I–XIII, and Okfuskee, Oklahoma, Counts XIV–XXIII, by the submission of false invoices reflecting the delivery of bridge and road materials to the counties. The non-delivered materials were paid by county warrants sent to defendant. The money was split 50/50 between the defendant and certain county officers participating in the scheme. To cover his tracks, defendant

obtained false back-up invoices from suppliers reflecting the original purchase of the materials later "resold" to the counties. The suppliers were usually paid a 10% commission for the back-up invoices. The government presented 12 witnesses and 38 exhibits. The defense put on no evidence.

By a pre-trial motion defendant sought to suppress a tape-recorded telephone conversation between him and Dorothy Griffin. The court denied the motion and the tape recording was presented to the jury. Griffin and her husband owned a small lumber business in Farris, Oklahoma. She ran the business because of her husband's poor health. She participated with various county commissioners and suppliers, including defendant Skipworth, in the kick-back scheme. The Internal Revenue Service, IRS, began an audit of her business. She told an IRS agent of the kick-back scheme. Later, she talked to representatives of the United States Attorney's Office and agents of the Federal Bureau of Investigation. In February, 1980, she agreed to cooperate with the government in its investigation. She agreed to record telephone conversations with county officials and suppliers, including defendant Skipworth. She was reimbursed by the government for her out-of-pocket expenses. Tr. 83–87. The government made no promises concerning her prosecution. Tr. 81–82, and 148. She gave her reasons for cooperating with the government. Tr. 92, 147. All recordings, including that of her telephone conversation with defendant, were made with her consent. Tr. 82, 88.

Title 18, U.S.C. § 2511(2)(c) provides:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

Defendant contends that Griffin's consent was coerced and not given voluntarily. Nothing in the record shows any coercion. She received no promise as to what charges would be made against her and was told that the sentence imposed would be up to the judge. Tr. 81–82 and 147–148. She not only gave her consent to the recording of her conversation with the defendant but consented also to 110 telephone and body recordings for the government.

No pressure was exerted on Griffin to deprive her of a free and rational choice. See *Garrity v. New Jersey,* 385 U.S. 493, 496–497, 87 S.Ct. 616, 618–19, 17 L.Ed.2d 562. She volunteered her participation in the over-all scheme to the IRS agent and readily cooperated in the government investigation for a period of several months. She made the recordings knowing what the government intended to do with them. See *United States v. Horton,* 7 Cir., 601 F.2d 319, 321–322; and *United States v. Bonanno,* 2 Cir., 487 F.2d 654, 659–660. In *United States v. Axselle,* 10 Cir., 604 F.2d 1330, 1338, we upheld the admission of a tape recording when the circumstances shown by the testimony "support an inference of such consent." The instant case presents a situation in which positive and uncontradicted evidence shows consent.

On cross-examination Griffin testified that government agents told her that the defendant had been indicted in State court. The defense argues that the tape recording should have been suppressed because its use violated defendant's Sixth Amendment rights to notice and assistance of counsel. The record contains no evidence of what the state charges were or what happened to them. Defendant says in his brief that the state charges were similar to those for which he was tried and convicted in federal court; that in March, 1979, he demurred to the state charges; that his demurrer was sustained; and that the state district attorney "made clear his intentions to appeal said ruling." Defendant's Brief, p. 6. None of those statements are supported by the record before us. The government in its brief says, Brief pp. 12–13, that the state charges were dismissed on January 15, 1979. This statement is unchallenged. The defendant filed no reply brief. The tape recording was made on February 20, 1980.

Nothing in the record shows that any criminal charges were then pending anywhere against the defendant.

■ Nothing in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, or *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, supports defendant's theory that when right to counsel attaches in a state prosecution it carries over to a subsequent federal investigation made after the dismissal of the state charges. A person may not immunize himself from federal investigation by reliance on a state criminal charge previously dismissed on his motion.

■ Defendant argues that the tape recording was outrageous conduct by government agents which requires the exercise of the court's supervisory power to protect him. See *Lopez v. United States,* 373 U.S. 427, 440, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462. *Lopez* holds, Id. at 440, 83 S.Ct. at 1388:

" . . . the court's inherent power to refuse to receive material evidence is a power which must be sparingly exercised. Its application in the present case, where there has been no manifestly improper conduct by federal officials, would be wholly unwarranted."

The record before us shows no improper conduct by federal officials. We do not have the record of the state proceedings. The statement of Griffin that the government agents knew of the state charges does not suffice to satisfy the *Lopez* requirements. The motion to suppress was properly denied and the evidence was properly received.

■ Counts XIV through XXIII charged the use of the mails to defraud Okfuskee County. Each count related to a specific county warrant. Government witness Montgomery, a former county commissioner of Okfuskee County, testified that he split claims with Don Skipworth and other suppliers. The government failed to ask Montgomery for an in-court identification of defendant Skipworth. Defendant argues that the evidence is insufficient to sustain the conviction on Counts XIV through XXIII because of the failure to identify.

Be that as it may, four government witnesses made in-court identifications of the defendant. See Griffin, Tr. 113–114; Montfort, Tr. 164; Savage, Tr. 179; and Fairbairn, Tr. 288. Montgomery identified defendant by name and also identified government exhibits showing transactions between Okfuskee County and Caddo Material and Equipment Company, a business operated by defendant. Some of the exhibits were signed by Skipworth. The exhibits were similar to those used by the government to establish fraudulent transactions with Stephens County. Witness Savage identified various exhibits pertaining to dealings between Stephens County and Skipworth and made an in-court identification of defendant as Skipworth. Tr. 179.

■ Failure to identify a defendant does not automatically bar the testimony of a witness. *United States v. Serlin,* 7 Cir., 538 F.2d 737, 747–748. The failure of a witness to identify presents "nothing more than a matter for factual argument to the jury." *United States v. Scarpellino,* 8 Cir., 431 F.2d 475, 477. The effect is on the weight, not the efficacy, of the evidence. *United States v. Rizzo,* 7 Cir., 418 F.2d 71, 81, cert. denied, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260.

This is not a case of substantial likelihood of misidentification. The events set forth in the indictment covered three years and many transactions with Don Skipworth. The claim that there might be more than one Don Skipworth involved challenges the imagination. The evidence is sufficient to sustain a reasonable inference that the Don Skipworth involved in the Stephens County transactions is the same Don Skipworth who defrauded Okfuskee County.

Affirmed.