28 F.3d 113
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert E. DIETZ, Defendant-Appellant.
 No. 93-8073.
 United States Court of Appeals, Tenth Circuit.
 June 30, 1994.
 
 1
 Before SEYMOUR and ANDERSON, Circuit Judges, and DAUGHERTY, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DAUGHERTY, Senior District Judge.
 
 
 4
 This case arose out of an investigation conducted by the United States Fish and Wildlife Service and the Wyoming Game and Fish Department.
 
 
 5
 In January 1988, James "Buck" Allemand traveled to Canada to plan an exclusive game hunt on the Allemand Ranch in northern Natrona County, Wyoming, for a group of Canadian hunters. The hunt was proposed to include buck antelope and buck deer, as well as certain "exotic" animals which were to be transported to the Allemand Ranch for the hunt. In October 1988, eleven Canadian hunters traveled to the Allemand Ranch, where they were met by Terry Vruno, a taxidermist from White Bear Lake, Minnesota, and his son, Mark Vruno. Vruno intended to solicit the Canadians for taxidermy work and other services such as videotaping the hunt. While most of the Canadians had a valid nonresident antelope license, most did not have a nonresident deer license and none of the hunters had the complete licenses required.
 
 
 6
 After the hunt, during which some of the Canadians shot as many as two antelope and two deer per hunter, the animal heads were transported to Terry Vruno's taxidermy shop in Minnesota and he commenced the work of mounting the deer and antelope heads to be shipped to the hunters in Canada. The mounted heads were boxed, crated and ready to ship to Canada when they were seized by U.S. Fish and Wildlife officials on March 27, 1990.
 
 
 7
 Subsequent to the search and seizure of the trophies, the federal grand jury for the District of Wyoming commenced an investigation concerning possible Lacey Act violations. The grand jury issued subpoenas for a number of witnesses, including Robert Eugene Dietz, one of the guides during the Allemand Ranch hunt. Dietz appeared before the grand jury on November 19, 1991, and was asked certain questions concerning the hunt. On January 31, 1992, the grand jury returned a three-count Indictment charging Dietz, among others, with one count of "conspiracy to export wildlife taken in violation of state law," 16 U.S.C. Sec. 3372 and 18 U.S.C. Sec. 371. Dietz entered his plea of "not guilty" to that charge. On May 22, 1992, a superseding Indictment was returned by the grand jury, adding a charge of "false declaration before a grand jury," in violation of 18 U.S.C. Sec. 1623 against Dietz. Dietz entered his plea of not guilty to the superseding Indictment on May 29, 1992.
 
 
 8
 During the trial held from November 30, 1992, to December 11, 1992, Dietz moved for judgment of acquittal at the close of the government's case on the grounds that no government witness had identified him as the Robert Eugene Dietz who made the statements complained of in Count IV of the superseding Indictment. The Motion for Judgment of Acquittal was denied and the jury found the Defendant not guilty of the felony "conspiracy to export" charge but guilty of the lesser-included misdemeanor offense of "conspiracy to transport wildlife in interstate commerce" and guilty of the "false declaration before a grand jury" charge in Count IV of the superseding Indictment. The Defendant moved for a new trial on the conviction of Count IV and such Motion was also denied. On August 3, 1993, the Defendant was sentenced to twelve months incarceration on the conviction of Count IV. It is from that conviction that the Defendant-Appellant now appeals.
 
 
 9
 The issues presented in this appeal are whether the Defendant-Appellant was properly identified during the trial as the person who had made the alleged false statements to the grand jury so as to warrant a conviction under 18 U.S.C. Sec. 1623 and whether the evidence was sufficient to convict the Defendant of making a false declaration to a grand jury, 18 U.S.C. Sec. 1623. Both of these issues involve the sufficiency of the evidence. This Court examines these issues to determine whether, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. United States v. Thurston, 771 F.2d 449 (10th Cir.1985); United States v. Kendall, 766 F.2d 1426 (10th Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).
 
 
 10
 In support of his assertion that the trial identification of the Defendant Robert E. Dietz as the Robert Eugene Dietz who made the alleged false statements to the Wyoming grand jury was insufficient to warrant a conviction under 18 U.S.C. Sec. 1623, the Appellant relies on the case of Gravatt v. United States, 260 F.2d 498 (10th Cir.1958), and subsequent cases concerning proof of identity. In Gravatt, this Court held the government's proof of identity by the introduction of a certified copy of a Judgment and Sentence, without more, to be insufficient. This Court stated that after evidence of the prior conviction is introduced, "proof of the facts should then be made that the defendant, in the case on trial is one and the same person as the defendant in the prior conviction relied upon to establish the second or subsequent conviction." Gravatt, 260 F.2d at 499, citing Woods v. State, 327 P.2d 720 (Okl.Cr.1958). The principle that independent corroboration concerning the identity of a defendant is required in order that the defendant be properly identified has been affirmed in numerous cases. See, e.g., Matula v. United States, 327 F.2d 337 (10th Cir.1984); United States v. McCray, 468 F.2d 446 (10th Cir.1972); United States v. Kilburn, 596 F.2d 928 (10th Cir.1978), cert. denied, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979).
 
 
 11
 The Appellant argues that neither the court reporter who reported the grand jury session attended by Robert Eugene Dietz nor the grand jury foreman identified any person in the trial courtroom as the person who made the alleged perjurious statements before the grand jury, and that no other witness who claimed to have heard the alleged perjurious words identified Robert E. Dietz, the Defendant in the case at bar, as the Robert Eugene Dietz who testified before the grand jury. The only witness who claimed to identify the Defendant in the case at bar was a U.S. Fish and Wildlife agent who testified that he saw the Defendant-Appellant enter the grand jury room in the federal building in Cheyenne, Wyoming, on November 19, 1991, at approximately 10:29 a.m., the same time listed on the cover page of the transcript. The agent could not, however, testify that the words which constituted the alleged false statements were made by the Defendant-Appellant Robert E. Dietz. The Appellant asserts that such identification by the Wildlife Agent is insufficient under the standards set forth in Gravatt and subsequent cases and thus the trial court's denial of the Motion for Judgment of Acquittal and the Motion for New Trial on this issue was erroneous and should be reversed by this Court.
 
 
 12
 We find no merit in the Appellant's arguments concerning the identification issue. First, the requirement of independent corroboration enunciated in Gravatt was met in the case at bar. Appellant Dietz was identified by the Fish and Wildlife agent as being the individual who entered the grand jury room at the time and on the date the grand jury testimony of Robert Eugene Dietz was taken. Such positive identification by the Wildlife agent is sufficient to meet the Gravatt test, even though the agent did not actually hear the grand jury testimony being given by Robert Eugene Dietz. "This is not a case of substantial likelihood of misidentification ... The claim that there might be more than one [Robert E. Dietz] involved challenges the imagination." United States v. Skipworth, 697 F.2d 281, 284 (10th Cir.1983).
 
 
 13
 In any event, this Court has previously held that the failure to properly identify a witness goes to the "weight, not the efficacy, of the evidence." Skipworth, 697 F.2d at 284, citing United States v. Rizzo, 418 F.2d 71, 81 (7th Cir.1969), cert. denied, Tornabene v. United States, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970). The question of the identity of the Defendant is thus a factual matter to be left to the jury. United States v. Serlin, 538 F.2d 737 (7th Cir.1986); United States v. Scarpellino, 431 F.2d 475 (8th Cir.1970). The jury in the case at bar found that the Appellant Robert E. Dietz was the same person who testified before the Wyoming grand jury on November 19, 1991, and this Court finds that the evidence in this case is sufficient to sustain a reasonable inference that the Robert Eugene Dietz who testified before the Wyoming grand jury is the same Robert E. Dietz who is the Appellant in the case at bar. We affirm the decision of the trial court on this issue.
 
 
 14
 The Appellant next contends that the evidence was insufficient to convict him of making a false declaration to a grand jury under 18 U.S.C. Sec. 1623. The following testimony was given by Appellant Dietz during the grand jury hearing:
 
 
 15
 Q. Did you see any of those hunters that you guided, the two Canadian hunters that you guided, kill anything else other than the two antelope you testified to?
 
 
 16
 A. Nope.
 
 
 17
 Q. Did they kill any deer?
 
 
 18
 A. Not that I know of.
 
 
 19
 Q. Did the first hunter kill any deer?
 
 
 20
 A. Nope.
 
 
 21
 Q. Did the second hunter kill any deer?
 
 
 22
 A. Nope.
 
 
 23
 Appellant's Appendix at 337.
 
 
 24
 During the trial, one of the Canadian hunters guided by Robert Dietz testified that Dietz was with him when he shot his deer and that, subsequent to the shooting, Dietz helped the hunter clean the deer and take it back to camp. The hunter, in fact, had photographs taken of some of the individuals on the hunt, including the guide Robert E. Dietz, with the deer. A second hunter testified that Dietz was standing beside him when he shot the mule deer and an antelope, and testified that "[i]f [Dietz] hadn't been there, I would not ... never shot anything." Appellant's Appendix at 189.
 
 
 25
 In support of his claim that there is insufficient evidence to convict him of perjury, Appellant Dietz relies on the United States Supreme Court case of Bronston v. United States, 409 U.S. 352, 34 L.Ed.2d 568, 93 S.Ct. 595 (1973), in which that Court held that the federal perjury statute should not be extended to include "answers unresponsive on their face but untrue only by 'negative implication.' " Bronston, 409 U.S. at 361. The Supreme Court placed the burden on the questioner to further interrogate the witness in the face of an unresponsive answer, and held that, even if the respondent intends that his answer mislead the questioner, the perjury statute is not violated as long as the answer given is literally true.
 
 
 26
 Appellant Dietz also claims that because the questions asked during the grand jury hearing were vague and ambiguous, an arguably untrue answer to such a question cannot be the basis for a perjury conviction in the absence of evidence concerning the interpretation of the question by the respondent. United States v. Lighte, 782 F.2d 367 (2nd Cir.1986).
 
 
 27
 Dietz states that the hunters he guided were unable to testify that he actually saw them shoot a deer for the reason that, as stated above, one hunter testified that Dietz was standing behind him at the time of the shot, while the other hunter, although he stated that Dietz was standing beside him when the deer was shot, did not specifically state that Dietz witnessed the event. As to the questions concerning whether the two hunters actually killed any deer, Dietz asserts that his negative answers merely described his own state of mind on the issue, and did not purport to describe "a state of facts external to his own mind." Appellant's Brief at 23. The Appellant contends that if the questions asked during the grand jury hearing are evaluated in the light of the context of that hearing, it is arguable that he did not knowingly give false answers before the grand jury in violation of the federal perjury statute. While Dietz concedes that his "Nope" answers to the third and fourth questions are false, he contends that those answers were only given after he had already stated in response to the second question that he had no knowledge of whether animals were in fact shot by the two hunters. The Appellant contends that if a perjury conviction is based upon questions which were answered truthfully in part, the conviction should be reversed and the case remanded for a new trial. Lighte, 782 F.2d 367.
 
 
 28
 Even assuming the Appellant properly preserved the Bronston issue for this Court's review, the Bronston rationale is inapplicable to the situation in the case at bar. The answers given by Dietz to the questions asked of him before the grand jury were not merely "unresponsive" but were patently untrue. While Dietz may not have actually seen the hunters' bullets strike the deer, Dietz was specifically asked if the hunters killed any deer and the evidence clearly establishes that he knew that the hunters had in fact done so and that the question should have been answered affirmatively. Dietz's present attempt to justify his answer as being a reflection of his "state of mind" is disingenuous at best.
 
 
 29
 Even if the Appellant's arguments concerning the interpretation of each isolated question asked him by the grand jury were credible, it is well established that "[i]n determining the meaning a declarant gives to a question, a jury need not examine isolated segments of the question and answer exchange, but may view it within the context of the entire line of questioning." Lighte, 782 F.2d at 373, citing United States v. Bonacorsa, 528 F.2d 1218 (2nd Cir.1976), cert. denied, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976); see also, United States v. Schafrick, 871 F.2d 300 (10th Cir.1989). When false testimony is knowingly given, perjury has been committed. Evaluating the questions asked of and the answers given by Appellant Dietz objectively and as a whole, Lighte, 782 F.2d at 372, 373, it is apparent that the jury in this case had ample cause to find that the Appellant's responses were false beyond a reasonable doubt.
 
 
 30
 There is also no merit to Dietz's argument that the questions asked him before the grand jury were vague and ambiguous, thus requiring reversal of the jury's verdict. "A question is fundamentally ambiguous when it 'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.' " Lighte, 782 F.2d at 375, citing United States v. Lattimore, 127 F.Supp. 405 (D.C.D.C.1955). When the questions asked Appellant Dietz are examined in light of this standard, it is beyond dispute that the questions are clear and their meaning apparent. In the absence of a fundamental ambiguity, the meaning and truthfulness of Appellant Dietz's answers to the questions were properly left to the jury and the jury's verdict should not be overturned by this Court. The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Fred Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470