**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHELLE FARMER,

    Defendant-Appellant.

No. 96-5190

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CR-60-H)

Neal B. Kirkpatrick, Assistant United States Attorney, Tulsa, Oklahoma, for
Plaintiff-Appellee.

Art Fleak, Tulsa, Oklahoma, for Defendant-Appellant.

Before PORFILIO, ANDERSON, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

    Title IV of the Organized Crime Control Act of 1970 provides in relevant part:

    Whoever under oath . . . in any proceeding before or ancillary to any court
or grand jury of the United States knowingly makes any false material
declaration . . . shall be fined under this title or imprisoned not more than
five years, or both.

18 U.S.C. § 1623(a).[1]  The issue in this case is whether a witness' negative response to a prosecutor's question on cross-examination will support the witness' subsequent conviction under the Act, where such question was amenable to two reasonable interpretations requiring different answers.  We hold on the facts of this case that the witness' answer to the prosecutor's question will not support the witness' conviction under the Act.  Accordingly, we reverse.

I.

Defendant Michelle Farmer was indicted on two counts of making false declarations before a federal court, in violation of 18 U.S.C. § 1623(a), and one count of conspiracy to commit the same, in violation of 18 U.S.C. § 371.  According to the indictment, Defendant testified falsely under oath at a pretrial hearing in the case of United States v. McMahon, No. 94-CR-176-BU (N.D. Okla., filed Jan. 9, 1995), aff'd in part, rev'd in part, 91 F.3d 1394 (10th Cir.), cert. denied, 117 S. Ct. 533 (1996).[2]  The Government voluntarily dismissed the conspiracy count against Defendant after the district court denied admission of her alleged coconspirators' statements into evidence.

[1]  As the words of the statute suggest, the elements of the crime of making false declarations under 18 U.S.C. § 1623(a) consist of testimony which is (1) given under oath; (2) false in one or more respects; (3) knowingly and willfully given; and (4) material.  United States v. Neal, 822 F.2d 1502, 1506 (10th Cir. 1987).

[2]  Peter J. McMahon, a friend of Defendant, was charged with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g), and possession of the same firearm in connection with a drug felony, in violation of 18 U.S.C. § 924(c).  On appeal, we reversed McMahon's § 924(c) conviction on the basis of Bailey v. United States, 516 U.S. 137 (1995).

2

<u>See</u> Fed. R. Evid. 801(d)(2)(e). A jury returned guilty verdicts against Defendant on both substantive counts. The district court subsequently granted Defendant's motion for a judgment of acquittal under Fed. R. Civ. P. 29(c), for want of materiality on one of the two substantive counts. The court denied Defendant's motion as to the remaining count. The district court sentenced Defendant to thirty-two months imprisonment, and Defendant appealed. Our jurisdiction arises under 28 U.S.C. § 1291.

The lone surviving count of the indictment at issue in this appeal alleged that Defendant lied when she responded "No" to the question: "Have you talked to Mr. McMahon, the Defendant about your testimony here today?" Rec. Vol. I, Doc. 61 at 11-12. The relevant exchange between Defendant and the prosecutor at the pretrial hearing reads in its entirety:

Q.     Prior to your coming to testify here today, did you speak to anyone about your testimony here today?

A.     No, just the attorney asked me if I would -- you know, verifying that I would come.

Q.     When was that?

A.     Well, I called the office this morning, which I didn't speak with him. Oh, I did too. I spoke with an investigator, a federal investigator.

Q.     Who is that?

A.     Well, I have got his name written down but I don't remember it. I believe it was Steve. I am not sure on that. I do have his name and number written down.

Q.     When did you talk to this investigator?

3

A.     I talked to him over the phone, I believe, a couple of weeks ago.  He just basically, you know, asked me if Peter [McMahon] had been to my house and that was about it.

Q.     Have you talked to Mr. McMahon, the Defendant about your testimony here today?

A.     No.

Q.     When is the last time you talked to Mr. McMahon?

A.     I talked to him -- well, I believe it was yesterday.  I am not real sure. It was yesterday or the day before.  He called and I talked to him briefly on the phone.

Q.     What did you talk about?

A.     Just -- he just wanted to know if I was going to be here and I told him I was going to do my best.  I have been working and, you know, I have two children, and that was about it.

Rec. Vol. V, at 108-09.

At Defendant's trial, the Government introduced a signed statement which Defendant gave to Agent Carlos Sandoval five months after testifying at McMahon's pretrial hearing.  Sandoval testified that at the direction of the United States Attorney, he interviewed Defendant for two hours on the morning of August 14, 1995, the day of her arraignment.  Prior to the interview, Defendant signed a statement waiving her right to counsel.  During the interview, Sandoval wrote out a statement for Defendant, which Defendant signed.  The relevant portion of the statement reads:

I never heard from Peter [McMahon] after he left until I received a subpoena to testify for him in Tulsa federal court.  I need to clarify that. Peter [McMahon] did call me before I got the subpoena.  He called me at

4

my friend's house who I recently moved to. . . . He called me and he was telling me about the arrest he had. He told me that he could not have sold drugs to a confidential informant because he was not -- if I could start again. He told me that he could not have sold drugs to a confidential informant because he was at my house, but he kept pinpointing a date. He started to give me some dates. He was talking very fast and I listened. Just before he hung up the phone he told me that I was going to get a subpoena. . . . Peter [McMahon] never told me to lie for him, but he did want me to mention a date he was at my house but I couldn't remember the date Peter [McMahon] was at my house.

Rec. Vol. V, at 123-24.

According to the Government, Defendant's statement to Agent Sandoval establishes that she spoke with McMahon about her testimony prior to the pretrial hearing, and thus violated § 1623(a) when she responded "No" to the question: "Have you talked to Mr. McMahon, the Defendant about your testimony here today?" Defendant responds by arguing that the prosecutor's use of the phrase "here today" in the question is ambiguous. Defendant claims she understood the prosecutor to ask whether she had spoken with McMahon on the day of his pretrial hearing, and thus answered the question truthfully. The Government counters by suggesting that any ambiguity in the question was for the jury to resolve.

## II.

In this circuit, we have had little opportunity to address the propriety of a § 1623(a) prosecution based upon a prosecutor's ambiguous question. In United States v. Larranaga, 787 F.2d 489 (10th Cir. 1986), we relied on the Supreme Court's decision in Bronston v. United States, 409 U.S. 352 (1973), and declined the Government's invitation

5

to construe § 1623(a) broadly: "'Precise questioning is imperative as a predicate for the offense of perjury.'" Larranaga, 787 F.2d at 497 (quoting Bronston 409 U.S. at 362).[3]

In Larranaga, we held as a matter of law that the defendant did not violate § 1623(a) when he responded "yes" to an inquiry about whether the subpoenaed minutes of a corporate board meeting were complete. The prosector asked: "Are these all of the minutes of the Board of Directors' meeting or any other subcommittees of that board?" Although a second set of minutes and some rough notes of the meeting existed, Defendant responded: "Yes, sir." Larranaga, 787 F.2d at 496. We reasoned:

> Here the questioner could have precisely asked Larranaga if there were any related rough notes, memoranda or the like dealing with the meetings covered by the minutes. He could also have inquired whether there were any other minutes detailing the events of the same meetings in question. Leaving the matter as it was permitted the answer to be ambiguous in the context of these facts, and untrue by its "negative implication." We must agree that the theory that perjury was committed by Larranaga's one answer is untenable under the perjury statute as construed in Bronston.

Id. at 497. In so holding, we expressly rejected the Government's argument that the jury should determine whether the defendant knowingly gave a false answer to the

---

[3] In Bronston, 409 U.S. at 352, the Supreme Court held that a witness could not be convicted of perjury for an answer that was literally true but not responsive to the question asked, and arguably misleading by negative implication. While Bronston involved a perjury conviction under the general perjury statute, 18 U.S.C. § 1621, lower federal courts have uniformly relied on it in reviewing perjury convictions under § 1623(a). See, e.g., United States v. Porter, 994 F.2d 470, 474 n.7 (8th Cir. 1993); United States v. Reveron Martinez, 836 F.2d 684, 689 (1st Cir. 1988); United States v. Lighte, 782 F.2d 367, 372 (2d Cir. 1986); United States v. Eddy, 737 F.2d 564, 567 (6th Cir. 1984); United States v. Tonelli, 577 F.2d 194, 198 n.3 (3d Cir. 1978); United States v. Abrams, 568 F.2d 411, 422 n.54 (5th Cir. 1978).

6

prosecutor's question. We stated:

> We are mindful of the trial court's instruction which charged the jury that if it found a question was ambiguous, and that the defendant truthfully answered one reasonable interpretation of it, then the answer would not be false. . . . We do not feel that the instruction solved the problem. In these circumstances, the question asked left the matter in doubt and the finding of guilty on the perjury charge as to this theory rested on an impermissible negative implication and ambiguous circumstances.

Larranaga, 787 F.2d at 497 n.2.

Subsequently, in United States v. Hilliard, 31 F.3d 1509 (10th Cir. 1994), a case involving a defendant's challenge to a two-level enhancement under the sentencing guidelines for perjury, we cited Larranaga for the proposition that "a defendant's truthful answer to a reasonable interpretation of an ambiguous question does not constitute perjury." Hilliard, 31 F.3d at 1519. We also quoted Bronston approvingly:

> Under the pressure and tensions of interrogation, it is not uncommon for the most earnest witness to give answers that are not entirely responsive. Sometimes the witness does not understand the question, or may in an excess of caution or apprehension read too much or too little into it. . . . It is the responsibility of the lawyer to probe: testimonial interrogation, and cross examination in particular, is a probing, prying, pressing form of inquiry.

Hilliard, 31 F.3d at 1519 (quoting Bronston, 409 U.S. at 358).

Consistent with Larranaga, some courts reviewing perjury convictions have removed the issue of a question's meaning from the jury, where such question is "fundamentally ambiguous." See United States v. Markiewicz, 978 F.2d 786, 808-809 (2d Cir. 1992); United States v. Manapat, 928 F.2d 1097, 1099-1101 (11th Cir. 1991);

7

United States v. Ryan, 828 F.2d 1010, 1015 (3d Cir. 1987); United States v. Lighte, 782 F.2d 367, 375-76 (2d Cir. 1986); United States v. Eddy, 737 F.2d 564, 565-71 (6th Cir. 1984). These courts have applied a de novo standard of review and resolved the issue as a matter of law in favor of the defendant. See also United States v. Swindall, 971 F.2d 1531, 1553 (11th Cir. 1992) (question of fundamental ambiguity reviewed de novo); United States v. Boone, 951 F.2d 1526, 1533 (9th Cir. 1991) (same).

A question is fundamentally ambiguous when it "'is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" United States v. Dietz, No. 93-8073, 1994 WL 319259, at *4 (10th Cir. 1994) (unpublished) (quoting Lighte, 782 F.2d at 375). The purpose of the rule of fundamental ambiguity is three-fold, namely, to (1) preclude convictions grounded on surmise or conjecture; (2) prevent witnesses from unfairly bearing the risks of inadequate examination; and (3) encourage witnesses to testify (or at least not discourage them from doing so). See Bronston, 409 U.S. at 359. Unfortunately, line drawing is inevitable, for to precisely define the point at which a question becomes fundamentally ambiguous, and thus not amenable to jury interpretation, is impossible.

To be sure, in most instances, the meaning of a prosecutor's question and the truthfulness of a defendant's answer are best left to the jury. See Dietz, 1994 WL 319259, at *4; United States v. Caucci, 635 F.2d 441, 445 (5th Cir. Unit B 1981).

8

Fundamental ambiguity is the exception, not the rule.  In other words, where a prosecutor's question is only "arguably ambiguous," a defendant's understanding of the question is for the jury to resolve in the first instance.  See Manapat, 928 F.2d at 1099; Ryan, 828 F.2d at 1015; Lighte, 782 F.2d 372-73.  A defendant may not succeed on a claim of fundamental ambiguity by isolating a question from its context in an attempt to give it a meaning entirely different from that which it has when considered in light of the testimony as a whole.  See Dietz, 1994 WL 319259 at *4 (citing United States v. Bonacorsa, 528 F.2d 1218, 1221 (2d Cir. 1976)).  Where a defendant claims that the question is ambiguous or misunderstood, the context of the question and answer becomes critically important.

Where a question considered in proper context is only arguably ambiguous, courts reviewing perjury convictions have viewed the defense of ambiguity as an attack upon the sufficiency of the evidence.  See Dietz, 1994 WL 319259, at *4; Manapat, 928 F.2d at 1099; United States v. Glantz, 847 F.2d 1, 7 (1st Cir. 1988).  Applying a de novo but more deferential standard of review, these courts view the evidence in a light most favorable to the Government and ask whether any reasonable jury could have found all elements of the crime beyond a reasonable doubt. See Swindall, 971 F.2d at 1553 (where the question is only "arguably ambiguous," the court reviews a claim of ambiguity under the sufficiency of the evidence standard).  Even under this more deferential standard, however, courts still require a perjury conviction to rest upon precise questioning.  See

9

United States v. Martellano, 675 F.2d 940, 942-46 (7th Cir. 1982) (reversing perjury conviction arising from ambiguous question on the basis of insufficient evidence); United States v. Bell, 623 F.2d 1132, 1135-37 (5th Cir. 1980) (same); United States v. Brumley, 560 F.2d 1268, 1275-77 (5th Cir. 1977) (same); United States v. Wall, 371 F.2d 398, 399-400 (6th Cir. 1967) (same).

Where a question admits of two reasonable interpretations, some evidence must show what the question meant to the defendant when she answered it. See Glantz, 847 F.2d at 6 ("The principles underlying the Bronston decision also bar perjury convictions for arguably untrue answers to vague or ambiguous questions when there is insufficient evidence of how they were understood by the witness."); accord Eddy, 737 F.2d at 567. Otherwise, the Government has not provided the jury with enough evidence to conclude beyond a reasonable doubt that the defendant knowingly rendered false testimony, as required to obtain a conviction under § 1623(a). See Wall, 371 F.2d at 400. While a jury may guess correctly as to a defendant's understanding of a question, "it is not entitled to guess at all." Martellano, 675 F.2d at 946; accord Glantz, 847 F.2d at 6. The evidence must establish the fact. Nor is a witness required to guess the meaning of a question posed to her upon peril of perjury. See United States v. Sainz, 772 F.2d 559, 564 (9th Cir. 1985). "Especially in perjury cases, defendants may not be assumed into the penitentiary." Brumley, 560 F.2d at 1277.

10

How we label the prosecutor's question in this case makes no difference. We need not decide whether the prosecutor's question: "Have you talked to Mr. McMahon, the Defendant about your testimony here today?" is fundamentally ambiguous or only arguably ambiguous for we would reach the same result regardless of any label. Undoubtedly, the question considered in isolation is ambiguous for it has two possible meanings. Whether the phrase "here today" refers to the word "talked" or the word "testimony," is patently unclear. Viewed in the context of her entire line of testimony, the question becomes no clearer. The phrase "here today" when considered in the context of the prosecutor's question: "Have you talked to Mr. McMahon, the Defendant about your testimony here today?" does not seem to be "a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined.'" Dietz, 1994 WL 319259 at *4 (quoting Lighte, 782 F.2d at 375).

Defendant could reasonably have believed the prosecutor to ask whether she had spoken with McMahon on the day of his pretrial hearing. In fact, the exchange between Defendant and the prosecutor immediately following her negative response to the question, buttresses her understanding of the question. The prosecutor next asked: "When is the last time you talked to Mr. McMahon?" Defendant responded that she had spoken with McMahon "yesterday or the day before." Defendant's response seems to

follow logically if she understood the prosecutor's former question as she claims. In other words, Defendant indicated by her testimony that she had not spoken with McMahon on the day of the pretrial hearing but had spoken with him a day or two before the hearing.

Defendant did not deny speaking with McMahon prior to her testimony. When asked what she and McMahon talked about, Defendant stated that McMahon "just wanted to know if I was going to be here and I told him I was going to do my best." At this point, the prosecutor pressed no further, but ended his inquiry into the matter. While Defendant may have had the opportunity at the pretrial hearing to divulge all matters she and McMahon discussed in their telephone conversation, the burden was on the prosecutor to pin her down with specific questions. See Bronston, 409 U.S. at 360. Precise examination, which the prosecutor failed to pursue in this case, rather than a perjury prosecution, is the primary safeguard against errant testimony. Id.

The Government simply did not offer any evidence to suggest what the question meant to Defendant when she answered it. Only by surmise and conjecture could the jury conclude that Defendant understood the question as the prosecutor did. The evidence in this case is insufficient to establish beyond a reasonable doubt that Defendant knowingly rendered false testimony as charged in the indictment. Accordingly, Defendant's conviction under 18 U.S.C. § 1623(a) is REVERSED, and this cause is REMANDED for entry of a judgment of acquittal.

12