**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Verel Tracy WESTOVER, Sr.,**
**Defendant–Appellant.**

No. 03–3287.

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 2004.

Thomas G. Luedke, Topeka, KS, for Plaintiff–Appellee.

Melissa Harrison, Kansas City, KS, and Ronald E. Wurtz, Topeka, KS, for Defendant–Appellant.

Before EBEL and TYMKOVICH, Circuit Judges, and HEATON, District Judge.*

## ORDER AND JUDGMENT**

HEATON, District Judge.

Defendant Verel Tracy Westover was convicted following a jury trial of violating 18 U.S.C. §§ 1001 and 641 by making false statements regarding matters within the jurisdiction of a federal agency[1] and embezzling government funds in conjunction with his receipt of public housing assistance and food stamps. He was sentenced to a term of imprisonment of one year and one day to be followed by two years of supervised release and ordered to pay $15,200.79 in restitution. Westover appeals his convictions and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm as to all issues initially raised and argued by defendant. We retain jurisdiction to permit defendant to raise additional issues in light of *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

### Background

On May 28, 1998, defendant and his wife applied for low income public housing administered by the Topeka Housing Authority (THA) and funded by Housing and Urban Development (HUD), completing an application in which they reported Mrs. Westover's Supplemental Security Income ("SSI") and social security benefits, plus

---

\*\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. Count 3 charges Westover with concealing a material fact by withholding information.

defendant's prior conviction for writing worthless checks. The Westovers also signed a Privacy Act Notice authorizing HUD and THA to request salary information from their current and previous employers and financial information from other institutions to insure they were eligible for housing benefits and that the benefits were set at the correct level. Later that year, on September 3, 1998, the Westovers signed a lease with THA and a certification that the financial information they had provided was accurate. The lease provided for retroactive rent increases if misrepresentations were discovered and required the tenant to notify THA immediately in writing of any changes in income that would affect the rent calculation.

THA subsequently learned and, in April, 1999, received confirmation from Childress Transport Inc. ("Childress") that about a month before Westover signed the lease with THA, he had begun working as a truck driver for Childress. THA received a wage verification from Childress dated 4–27–99, and the next month a THA staff member completed a report recalculating the Westovers' monthly rent from $144 to $422 based on defendant's unreported wages.

THA reported its findings to the Office of the Inspector General for HUD and the federal agency started an investigation. In accordance with HUD's standard investigative procedures, THA was instructed not to disclose the investigation to defendant, but to allow the Westovers to continue living at the housing complex. Westover knew THA was aware of his employment as he called the housing agency in July requesting a copy of the paperwork Childress had faxed THA, but his call was not returned. Defendant also testified he repeatedly brought THA his pay stubs, but THA's records did not reflect their receipt.[2]

In early July 1999, THA sent the Westovers an annual recertification letter, advising them of their yearly obligation under the terms of their lease to furnish the housing authority with accurate information pertaining to their income, assets and family composition. The letter specified both the date and time they were to appear at the THA office and also listed the information they were to bring with them. A rent adjustment notice generated after the recertification process reflected that defendant reported only Mrs. Westover's SSI and social security benefits.

The following year the recertification procedure was repeated and once again the only income reported was what Mrs. Westover received from social security. On August 29, 2000, the Westovers certified in writing that the financial information they had provided THA was accurate and complete.

On August 17, 2000, the Westovers applied for food stamps from a federally funded program administered by the Kansas Department of Social and Rehabilitation Services ("SRS"). Defendant reported monthly social security income and that he had been employed for four months by National Carriers until the job ended on July 7, 2000, due to a work injury. The SRS discovered the following April that defendant had failed to report his employment with another trucking company, Renzenberger, Inc. Several days later defendant advised the agency he no longer needed benefits and surrendered his food stamp card.

---

2. THA did not accept check stubs as an indication of income, because they generally did not reflect the pay rate. ROA, Vol. 5, p. 118–19; Supp. Vol. 1, Gov. Exhibit 6, p. 2, Annual Recertification Letter, p. 2 ("NO CHECK STUBS WILL BE USED TO VERIFY INCOME.").

Although he did not report the gross income to THA or SRS, defendant earned in excess of $20,000 between August 1, 1998, and July 4, 1999, as a truck driver and independent operator/truck lessee for Childress Transport, Inc. National Carriers paid him about $15,422 from March 1, 2000, until approximately August 7, 2000, and he received gross wages of $9,854 while employed by Renzenberger, Inc. from September 27, 2000, until June 23, 2001. In addition to failing to disclose his earnings, plus a lump sum worker's compensation settlement of $14,500 paid on 6–29–01, and worker's compensation benefits from September 1999 through February 2000 totaling $11,874.30,[3] defendant did not inform THA that he had been convicted of arson, burning to defraud and insurance fraud in 1984.

On October 9, 2002, a five-count second superseding indictment was returned against defendant. Count 1 charged Westover with making a false material statement or representation on May 28, 1998, by signing an application for public housing and disclosing that he only had one felony conviction, when he knew he had at least three prior felony convictions. In count 2 Westover was charged with making a false material statement or representation on September 3, 1998, to the Topeka Housing Authority by certifying the accuracy of information he had provided concerning his income for purposes of determining the amount of rental subsidy for which he was entitled, when he knew the information was incorrect. Count 3 charged Westover with concealing by scheme a material fact by withholding income information from the Topeka Housing Authority, in order to continue receiving rental subsidies. Count 4 charged the

defendant with making a false material statement or representation in an application for participation in the Food Stamp Program by representing his employment with National Carriers had terminated on July 7, 2000, when he was still working there, and count 5 charged Westover with embezzling and stealing in excess of $1000 from the United States by his receipt of rental subsidies through his participation in the public housing program.

On appeal defendant argues the district court erred by refusing to instruct the jury on his theory of defense—entrapment by estoppel—and failing to give his requested instruction on ambiguous questions. Westover also contends the evidence was insufficient to support his convictions on counts 3 and 4, that the alleged errors collectively constitute cumulative error and that the district court erred in calculating his relevant conduct under the Sentencing Guidelines.

## Discussion

### Jury Instructions

*Theory of defense—entrapment by estoppel*

■ While we review a district court's refusal to give a particular jury instruction for abuse of discretion, the ultimate standard of review is de novo, to determine whether the instructions as a whole accurately informed the jury of the issues and the governing law. *United States v. McPhilomy*, 270 F.3d 1302, 1310 (10th Cir. 2001), *cert. denied*, 535 U.S. 966, 122 S.Ct. 1384, 152 L.Ed.2d 374 (2002); *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir.1998). A defendant is entitled to an

---

**3.** The benefit checks were made payable to Westover and his attorney, whose share of the recovery could not exceed 25%. While the housing agency could exclude a lump sum workers' compensation payment from an applicant's income when calculating his or her monthly rent payment, it still had to be reported.

instruction on his theory of the defense if the instruction is supported by the evidence and the law. *Wolny,* 133 F.3d at 765. "However, a 'theory of the defense' instruction is not required if it would simply give the jury a clearer understanding of the issues. Rather, a 'theory of the defense' instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate." *Id.* (internal citation omitted).

Westover argues the district court erred by refusing to submit his requested instruction on entrapment by estoppel as the evidence established: (1) that THA officials knew he was working, but had failed to report his income; (2) that he knew THA officials were aware of his employment, as he called THA in July 1999, asking about the information Childress Transport had provided the agency and had openly parked his semi-tractor in front of his residence; and (3) that, despite their knowledge, THA officials allowed defendant to continue living in public housing, paying the same rent. Westover claims the officials' inaction for two years led him reasonably to believe that his failure to report his income was not illegal. The district court rejected the instruction as not supported by the evidence. We agree.

"The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments. There must be an 'active misleading' by the government agent, and actual reliance by the defendant. Further, the defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v.*

*Nichols,* 21 F.3d 1016, 1018 (10th Cir.1994)(internal quotation and citations omitted).

Our review of the record reveals no evidence that the government actively or affirmatively mislead Westover and defendant cites no authority suggesting that inaction on the government's part, alone, is enough for estoppel to apply. The jury was instructed that good faith constituted a complete defense to the charged offenses. This and the other instructions adequately covered the issues raised by the evidence. The district court did not abuse its discretion by refusing defendant's entrapment by estoppel instruction.

*Instruction on ambiguous questions*

■ The defendant contends that the certifications he signed were vague and ambiguous because they did not specify the information being certified. The tenant/applicant simply certified that the information given to the THA "on household composition, income, net family assets, and allowances and deductions is accurate and complete to the best of my/our knowledge and belief." The defendant also argues that he understood, based on the intake officer's questions, that he was only being asked about his current employment, i.e., whether he was employed on the date he signed each certification.

The defendant argues that because of the ambiguity regarding the information he was required to disclose to the housing authority, the district court erred in refusing to give the jury the following instruction:

In reviewing any statement which is alleged to be false, you should consider such statement in the context of the actual questions asked, and the words used should be given their common and ordinary meaning unless the context clearly shows that a different meaning

was mutually understood by the questioner and the witness.

If you should find that a particular question was ambiguous and that the defendant truthfully answered one reasonable interpretation of the question under the circumstances presented, then such answer would not be false.

Defendant's argument is unpersuasive. The annual re-certification letters advised Westover that he must "furnish accurate information to the Housing Authority as to all income, assets, and family composition." ROA, Supp. Vol.1, Gov. Exhibit 6. The lease he executed on September 3, 1998, not only specified that he must provide financial information annually so THA could "redetermine rent, the size of the dwelling unit and tenant eligibility for low rent housing," but required him to immediately notify the project management of any change in income that would affect the rent calculation, negating his contention that the agency was only concerned with his employment on the date of his recertifications. *Id.* Gov. 2.

The cases cited by Westover, *United States v. Farmer*, 137 F.3d 1265 (10th Cir.1998) and *United States v. Larranaga*, 787 F.2d 489 (10th Cir.1986), are inapposite as they each involved a single ambiguous question responded to in a trial context. The issue in *Farmer* was whether a witness could be convicted of making a false declaration under Title IV of the Organized Crime Control Act of 1970 for responding negatively to a prosecutor's question on cross-examination when the question was subject to two reasonable interpretations requiring different answers. Similarly, our ruling in *Larranaga* focused on the defendant's response to a single question. Here the defendant was not asked just once about his current employment status; he was repeatedly advised of the housing agency's need for information pertaining to family income.

*Farmer* and *Larranaga* also are distinguishable as they addressed perjury convictions under 18 U.S.C. § 1623. We noted the distinction between, and different policy concerns underlying, perjury and § 1001 prosecutions in *United States v. Harrod*, 981 F.2d 1171, 1175–76 (10th Cir. 1992). While "in the adversary world of trial" the interrogator is responsible for pinning down the witness with skillfully asked questions, "no such question-and-answer interplay exists in an 18 U.S.C. § 1001 false statement action. When seeking information outside the adversarial context of trial, the government needs and expects those who answer its inquiries ... to answer truthfully and precisely." *Id.* at 1175.

While the district court concluded the proffered instruction was not warranted by the evidence, the defendant was allowed to argue that the questions were ambiguous. As the instructions accurately informed the jury of the governing law, the district court did not abuse its discretion in refusing to submit the defendant's ambiguous question instruction to the jury.

## Sufficiency of Evidence

Westover contends the evidence presented at trial was insufficient to support his convictions on counts 3 and 4. We review de novo the sufficiency of the evidence and will uphold a conviction if, " 'taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.' " *United States v. Sarracino*, 131 F.3d 943, 946 (10th Cir.1997) (quoting *United States v. Floyd*, 81 F.3d 1517, 1525 (10th Cir.1996)).

*Count 4—Making a false statement.*

■ Count 4 of the indictment charged Westover with violating 18 U.S.C. § 1001(a)(2) by misrepresenting his employment status in an application for food stamps. To obtain a conviction under § 1001(a)(2), the government must prove: (1) the defendant made a statement; (2) the statement was false and the defendant knew it was false; (3) the statement was made knowingly and willfully; (4) the statement was made within the jurisdiction of a federal agency; and (5) the statement was material. *United States v. Harrod,* 981 F.2d 1171, 1175 (10th Cir.1992).

Westover contends that he was charged in Count 4 with submitting an application for food stamps in which he stated that his employment with National Carriers had been terminated on July 7, 2000, while, on the date he submitted the application (August 23, 2000), he was still employed by National Carriers. Because he actually was unemployed on August 23rd he did not, he contends, make a false statement as charged.[4]

The defendant does not dispute that because he worked for National Carriers until August 8, 2000, the statement that his employment with the company had terminated on July 7, 2000, was incorrect. A reasonable jury could conclude beyond a reasonable doubt that the "still employed" language in Count 4 referred to the date the defendant stated he quit his job with National Carriers, not the date he submitted his food stamp application.

*Count 3—Making a false statement.*

Count 3 of the indictment charged Westover with violating 18 U.S.C. § 1001(a)(2) by failing to report income to THA that would affect the amount of rent subsidies he was entitled to receive. Westover's challenge to the sufficiency of the evidence to support this count fails, as he merely reasserts his ambiguity argument, which we have previously rejected.[5]

### Cumulative Error

■ "A cumulative-error analysis aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *United States v. Toles,* 297 F.3d 959, 972 (10th Cir.2002) (quoting *United States v. Rivera,* 900 F.2d 1462, 1470 (10th Cir.1990)(en banc)). Because "[o]nly actual errors are considered in determining whether the defendant's right to a fair trial was violated," *id.,* and we have concluded the district court did not commit error, the cumulative error analysis does not apply.

### Sentencing Factor Manipulation

■ Westover argues the district court miscalculated his relevant conduct under the Sentencing Guidelines. Legal conclu-

---

4. Count Four of the Second Superseding Indictment charged the defendant with making a false statement on August 23, 2000, by signing an application for food stamps, representing that "he terminated his employment with Skyview Systems/National Carriers on July 7, 2000, when in truth and in fact, as the defendant then and there well knew, he was still employed by Skyview Systems/National Carriers." ROA, Vol. 1, Gov. Exhibit 49.

5. The government correctly asserts that the court's review of this conviction is only for plain error because Westover failed to move for a judgment of acquittal on Count 3. ROA, Vol. 1, Doc. No. 81, Vol. 6, p. 367. However, "'review under the plain error standard ... and a review of sufficiency of the evidence usually amount to largely the same exercise.'" *United States v. Kimler,* 335 F.3d 1132, 1141 n. 10 (10th Cir.2003) (quoting *United States v. Duran,* 133 F.3d 1324, 1335 n. 9 (10th Cir.1998)), cert. denied, — U.S. —, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003).

sions under the guidelines, including the factors the district court may consider in determining loss, are reviewed under the de novo standard, while the district court's factual determinations are reviewed for clear error. *United States v. Lacey*, 86 F.3d 956, 962 (10th Cir.1996).

The defendant challenges the district court's consideration of losses to the government that accrued as the result of alleged prosecutorial delay. Instead of filing charges as soon as it discovered the defendant's failure to report his income, the government waited, Westover claims, two years to indict him in order to increase his sentence.

Claims of sentencing factor manipulation are analyzed under the outrageous government conduct standard. *Id.* at 963. "[T]he relevant inquiry is whether, considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous, and intolerable that it offends the universal sense of justice.'" *Id.* at 964 (internal quotation omitted). The defense is rarely available, as "the courts will not fine tune conduct of law enforcement officials that does not offend the universal sense of justice." *Id.* (internal quotation omitted). On appeal the government argues that the delay was justified by the need for further investigation to obtain sufficient evidence of the defendant's intent to convict him, while the explanation given at trial was the need to prevent the destruction of evidence.

Regardless of why the delay occurred, the government's conduct in this case did not contravene the applicable due process standard.

### *Blakely* Issues

Defendant has moved to supplement his brief to raise additional issues in light of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), decided after initial briefing and argument in this case. Defendant's motion is GRANTED. Defendant is given leave to file, within twenty days from entry of this order, a supplemental brief addressing *Blakely* issues. The government's response shall be due twenty days thereafter.

### Conclusion

The judgment of the district court is **AFFIRMED** as to all issues initially raised by defendant. The Court retains jurisdiction to address *Blakely* issues raised by defendant in his supplemental brief.