**UNITED STATES of America,
Plaintiff,**

v.

**Herbert A. DANIELS, Defendant.**

**No. CR.A.01–40002–01–KHV.**

United States District Court,
D. Kansas.

July 13, 2001.

Scott K. Logan, Fred J. Logan, Jr., M. Bradley Watson, Logan & Logan, L.C., Prarie Village, KS, Jeff K. Brown, Logan & Logan, LC, Prairie Village, KS, Thomas J. Bath, Jr., Bath & Edmonds P.A., Overland Park, KS, Jeffrey D. Morris, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, Herbert A. Daniels, Leawood, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

The United States has charged defendant with numerous counts of health care fraud, mail fraud and perjury. This matter is before the Court on Herbert Daniels' Motion To Dismiss (Doc. # 44) filed May 18, 2001; Herbert Daniels' Motion For Bill Of Particulars With Suggestions In Support (Doc. # 47) filed May 18, 2001; Herbert Daniels' Motion For Clarification On *Brady* Disclosure (Doc. # 48) filed May 18, 2001; Herbert Daniels' Motion To Summarize The Indictment And To Not Submit A Copy Of The Indictment To The Jury With Final Instructions (Doc. # 52) filed June 15, 2001; and Herbert Daniels' Motion To Strike Surplusage From The First Superseding Indictment With Suggestions In Support (Doc. # 46) filed May 18, 2001. Except for defendant's motion to summarize the indictment and defendant's motion to strike, the Court held oral argument on the above motions on June 11, 2001. After carefully considering the parties' briefs and oral argument, the Court is prepared to rule.

### Factual Background

On February 14, 2001, a grand jury returned a first superseding indictment which charges defendant with 36 counts of health care fraud in violation of 18 U.S.C. § 1346, seven counts of mail fraud in violation of 18 U.S.C. § 1341 and four counts of perjury in violation of 18 U.S.C. § 1623(a). See First Superseding Indictment (Doc. # 12). The allegations of the superseding indictment, which the Court assumes as true for purposes of defendant's motion to dismiss, may be summarized as follows:

Defendant committed a scheme to defraud his patients and numerous health care benefit programs of money and to defraud his patients of the intangible right to honest services. Id. ¶ 1. Defendant's scheme began as early as March 1986 and has continued through the return of the indictment. See id. ¶¶ 1, 16. Through his scheme, defendant enriched himself and attempted to enrich himself through billings to and receipts from various health care benefit programs. Id. ¶ 5. Defendant's scheme included (1) billing for services not rendered; (2) "upcoding" (charging for a service reimbursable at a higher rate than appropriate for the service actually provided, which would make more money for defendant); (3) luring patients to surgery, which could cause and did cause bodily injury and serious bodily injury to patients; and (4) covering up his fraud by

creating false documents and providing false testimony. Id.

The first superseding indictment charges that defendant employed the following patterns or practices to execute his scheme:

a. billing for sham surgeries, that is surgery procedures he claims to have performed but could not have performed in time frames of as little as 5 minutes to 35 minutes, no matter the number or complexity of the procedures ostensibly performed;

b. upcoding, that is, misrepresenting the service provided by charging for a procedure which would make more money for him, but which he did not perform;

c. covering up his false billings and fraud against his patients, including the following patterns of falsification:

(1) training residents to "tap dance on the charts," that is, falsify patient charts and histories and physicals to justify treatment;

(2) falsifying documents including: correspondence, history and physical reports, and operative reports to justify procedures recommended and/or ostensibly performed, including but not limited to falsifying patient complaints and symptoms, falsifying assessments, and falsifying informed consent from patients;

(3) falsifying documents concerning the patient's condition following surgery, to make it appear the patient was doing well after surgery, when in truth and in fact, patients were continuously complaining to him about debilitating pain and loss of hearing after surgery, or the defendant had worsened a patient's condition and caused bodily injury and serious bodily injury to the patient;

(4) falsely testifying under oath regarding material facts to conceal his scheme;

d. luring patients into surgery with false representations and omissions of material information, including:

(1) concealing from patients material and recognized complications, risks and alternatives to surgery;

(2) concealing the fact he was performing or claiming to perform procedures for which he intended to and did bill;

(3) scare tactics, such as suggesting the presence of cancer and the immediate need for surgery to prevent hearing loss;

(4) guaranteeing results;

(5) representing that the surgery was virtually painless;

(6) exaggerating conditions, such as representing to patients that they had the worst deviated septum Daniels had ever seen; and

(7) representing that his sinus surgeries produced little or no bleeding, when he knew that his blood loss was pronounced; and

e. utilizing these false billings, false documents, false representations and omissions of material information to optimize, and attempt to optimize, his billing of health care benefit programs.

Id. ¶ 17. In furtherance of his scheme to defraud, defendant also (1) represented to patients that they required surgery or diagnostic procedures at a hospital when in truth and in fact, the patient could have been treated or tested in the office, see id. ¶¶ 18–19, and (2) obtained sufficient tissue, bone and/or cartilage from the patient while under anesthesia, to obtain a pathology report that would ostensibly justify his surgery recommendation, see id. ¶ 20.

Last year, defendant was tried before a jury in federal court in Topeka, Kansas. The jury was unable to reach a verdict. The health care fraud and mail fraud charges in this action include many of the same charges brought against defendant at the first trial. In addition to the fraud charges, defendant is charged with four counts of perjury arising in part from his testimony at the first trial.

## Analysis

### I. Defendant's Motion To Dismiss (Doc. # 44)

#### A. Motion To Dismiss Standards

▬ An indictment is sufficient if (1) it contains "the elements of the offense and sufficiently apprises the defendant of what he must be prepared to meet," and (2) it shows to what extent the defendant may plead a former acquittal or conviction as a bar to further prosecution for the same cause. *United States v. Darrell*, 828 F.2d 644, 647 (10th Cir.1987) (quoting *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976)). An indictment also "is required to implement the Fifth Amendment guaranty and make clear the charges so as ... to avoid [a defendant's] conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him." *Radetsky*, 535 F.2d at 562; see *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Brown*, 995 F.2d 1493, 1504 (10th Cir. 1993), cert. denied, 510 U.S. 935, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). An indictment is held only to minimal constitutional standards. See *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir.1992). The Court reviews the sufficiency of an indictment by reading it as a whole and interpreting it in a common-sense manner.

See *United States v. Kilpatrick*, 821 F.2d 1456, 1462–63 (10th Cir.1987), aff'd, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Courts should not "insist that any particular word or phrase be used in stating an essential element" and should not read the indictment in a hypertechnical manner. *Id.*; see *United States v. Yoon*, 128 F.3d 515, 522 (7th Cir.1997).

#### B. Analysis

• Health Care And Mail Fraud Charges

▬ To establish health care fraud, the government must prove that defendant knowingly devised or participated in a scheme or artifice to defraud health care benefit programs in connection with the delivery of and payment for health care benefits, items and services. See 18 U.S.C. § 1347. Defendant argues that Counts 1 through 12 and 22 through 36 are insufficient because the indictment does not link defendant's purported conduct with the actual criminal charges against him. Defendant maintains that based on the chart format of the indictment, he must guess as to the actual basis for the charges. With regard to Counts 1 through 12, paragraph 23 alleges:

> On or about the dates set forth below, in the District of Kansas, the defendant, **HERBERT A. DANIELS** knowingly and wilfully executed and attempted to execute a scheme and artifice to defraud the health care benefit programs listed below, in connection with the delivery of and payment for health care benefits, items, and services, and resulting in bodily injury and serious bodily injury to Michelle U., including extreme physical pain and protracted loss of hearing:

**The patients in the following chart were subjected to surgery:**

| Count | Patient & Insurance | On or About Date | Procedures Planned for Patient and Maximum Surgical Time Recorded |
|---|---|---|---|
| | Linda G. | | Septoplasty |
| 1 | Humana Employers Health Insurance | 8/18/97 | Turbinoplasty (x2) [3 procedures in 17 minutes] |
| | Linda G. | | Bilateral endoscopic Antrostomies |
| 2 | Humana Employers Health Insurance | 3/20/98 | Removal of diseased mucosa |
| | | | Right Sphenoid Sinusotomy [3 procedures in 17 minutes] |
| | Regina G. | | Septoplasty |
| 3 | Cigna Healthcare Connecticut General | 6/26/98 | Turbinoplasty (x2) |
| | | | Bilateral Endoscopic Antrostomies |
| | | | Removal of diseased mucosa and mucocele [5 procedures in 17 minutes] |
| | Diane J. | | Bilateral Endoscopic Antrostomies |
| 4 | United Healthcare Insurance Company | 1/21/99 | Removal of diseased mucosa |
| | | | Bilateral Endoscopic Ethmoidectomies |
| | | | Bilateral Sphenoid Sinusotomies |
| | | | Septoplasty Turbinoplasty (x4) [11 procedures in 30 minutes] |
| | Michele U. | | Left Mastoidectomy |
| 5 | Prudential HealthCare | 3/16/99 | Bilateral Myringotomy |
| | | | Placement of T-tubes [3 procedures in 35 minutes] |
| | Clara W. | | Septoplasty |
| 6 | Medicare & Epoch Group L.C. | 5/19/97 | Excision of Nasal Mass [2 procedures in 11 minutes] |
| | Janice G. | | Septoplasty |
| 7 | Consolidated Associations of Railroad Employees | 11/10/98 | Turbinoplasty (x2) |
| | | | Microlaryngoscopy |
| | | | Esophagoscopy |
| | | | Excision of the nasal mass [6 procedures in 20 minutes] |
| | Janice G. | | Bilateral Endoscopic Antrostomies |

| | | | |
|---|---|---|---|
| 8 | Consolidated Associations of Railroad Employees | 5/25/99 | Removal of diseased mucosa [2 procedures in 10 minutes] |
| | Janice G. | | Partial excision of ear |
| 9 | Consolidated Associations of Railroad Employees | 8/24/99 | Excision of cheek lesion<br><br>Microlaryngoscopy & excision of lesion Esophagoscopy [5 procedures in 20 minutes] |
| | Harold S. | | Left Endoscopic Antrostomy |
| 10 | Prudential | 11/30/98 | Removal of cyst & opening up natural ostium Septoplasty<br><br>Turbinoplasty (x4) [7 procedures in 17 minutes] |
| | Nancy H. | | Septoplasty |
| 11 | Medicare | 3/26/99 | Turbinoplasty (x4) [5 procedures in 29 minutes] |
| | Delores L. | | Microlaryngoscopy with excision of lesion Bronchoscopy with washing |
| 12 | Cigna Healthcare | 9/21/99 | and aspiration Esophagoscopy [3 procedures in 5 minutes] |

The chart does not identify the nature of the fraud with regard to each patient, but paragraph 22 of the indictment, which is included under Counts 1 through 36, incorporates by reference paragraphs 1 through 21. Paragraph 5 identifies the fraudulent scheme as enrichment of defendant by billings to and receipts from health care programs including (1) billing for services not rendered; (2) "upcoding," that is, charging for a service reimbursable at a higher rate than appropriate for the service actually provided, which would make more money for him; (3) luring patients to surgery, which could cause and did cause bodily injury and serious bodily injury to patients; and (4) covering up his fraud by creating false documents and providing false testimony. By incorporation into paragraph 22, paragraph 5 applies to each of the patients identified in Counts 1 through 12 and provides defendant sufficient notice of what he must be prepared to meet at trial.[1] Accordingly, Counts 1 through 12 are constitutionally sufficient.

For the same reasons, the Court also rejects defendant's vagueness argument with regard to Counts 22 through 36. Paragraph 27 (Counts 22–36) follows a similar format to the chart for Counts 1 through 12. It identifies the count number, patient name, insurance company, the date and the procedures planned for each patient. The only difference between the charts is that the patients in Counts 22 through 36 did not actually undergo the recommended surgery and defendant is therefore charged with attempt to execute

1. At oral argument, defense counsel conceded that if paragraph 5 of the indictment was sufficiently linked to each patient identified in Counts 1 through 12, the counts would be constitutionally sufficient. Defendant fails to explain, however, why paragraph 22, which appears immediately after the title "Counts 1–36" and incorporates paragraph 5, is insufficient.

a scheme to defraud. The title of the chart preceding Counts 22 through 36 clearly states that the patients did not undergo the recommended surgery and paragraph 27 states that defendant is charged with attempt with regard to these patients. Again, paragraph 22 of the indictment, which is included under Counts 1 through 36, incorporates by reference paragraph 5, which identifies the nature of the fraudulent scheme. The Court therefore finds that Counts 22 through 36 provide defendant adequate notice and are constitutionally sufficient.

■ Defendant essentially argues that with regard to the health care fraud charges, the indictment charges too much because it identifies numerous ways that he was able to execute the scheme to defraud without linking each method to a particular count or patient. For example, paragraph 5 charges that the scheme to defraud included "luring patients to surgery." Paragraph 17(d) charges that defendant fraudulently lured patients into surgery by:

> (1) concealing from patients material and recognized complications, risks and alternatives to surgery;
>
> (2) concealing the fact he was performing or claiming to perform procedures for which he intended to and did bill;

(3) scare tactics, such as suggesting the presence of cancer and the immediate need for surgery to prevent hearing loss;

(4) guaranteeing results;

(5) representing that the surgery was virtually painless;

(6) exaggerating conditions, such as representing to patients that they had the worst deviated septum Daniels had ever seen; and

(7) representing that his sinus surgeries produced little or no bleeding, when he knew that his blood loss was pronounced.

Defendant argues that he must guess which specific statements or omissions apply to each count or patient. Although the Court finds that defendant is entitled to a bill of particulars to obtain such information,[2] see infra part II, the indictment does not have to include such evidentiary detail to survive a motion to dismiss. See *Curtis*, 506 F.2d at 989 ("Mere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment based upon 1341."). It must only provide a "fair indication of the nature or character of the scheme or artifice relied

---

**2.** Defendant argues that a bill of particulars cannot save an unduly vague indictment. See Herbert Daniels' Suggestions In Support Of Motion To Dismiss (Doc. # 45) filed May 18, 2001 at 16 (citing *United States v. Josten*, 704 F.Supp. 841, 844 (N.D.Ill.1989)). In Josten, the court dismissed mail and wire fraud charges against an individual charged with churning customer's commodities accounts because the indictment did not state the allegedly false representations, the names of the alleged victims or the accounts to which it pertained, or the specific dates upon which the challenged activity took place. See *id.* The court noted that if the indictment had omitted only one of these facts, dismissal may not have been warranted. See *id.* In the instant action, the indictment clearly provides

defendant with notice of the nature of the scheme (as specified in paragraph 5), the patient and insurance company involved, the date of the alleged fraudulent act and the specific surgical procedure involved. Defendant has "some substantial indication of the nature or character of [the] scheme or artifice to defraud." *United States v. Curtis*, 506 F.2d 985, 989 (10th Cir.1974). Because the indictment is not unduly vague, the Court finds that a bill of particulars, rather than dismissal of the indictment is appropriate. See *id.* ("Mere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment based upon 1341.").

upon." *Id.* at 992. Read in conjunction with paragraph 5, each of the health care fraud counts adequately apprises defendant of the nature of the fraudulent scheme (i.e. overbilling, fraudulently luring patients to surgery, and creating false documents and providing false testimony to cover up the fraud), the patient and insurance company involved, the date, and the specific surgical procedure involved. Accordingly, the health care fraud charges are constitutionally sufficient.

Finally, defendant argues that based on the chart format of the indictment, he cannot ascertain the factual basis for the mail fraud charges (Counts 37–43). To establish mail fraud, the government must prove (1) that defendant knowingly devised or participated in a scheme or artifice to defraud or to obtain money by false pretenses, representations or promises; (2) that the scheme, artifice, pretenses, representations or promises were material; (3) that defendant did so with the specific intent to obtain money; and (4) that defendant used the mail to further the scheme. See 18 U.S.C. § 1341. Paragraph 29 alleges:

> Having devised the aforesaid scheme and artifice to defraud, on or about the dates set forth below, in the District of Kansas, the defendant, **HERBERT A. DANIELS** for the purpose of executing the aforesaid scheme and artifice, and attempting so to do, knowingly deposited or caused to be deposited, to be sent and delivered, by the U.S. Postal Service or private or commercial interstate carrier, according to the instructions thereon, any thing or matter, to wit:

| Count | On or About Date Deposited or Delivered | Thing or Matter | Recipient |
|---|---|---|---|
| 37 | 2/6/96 | Bill for services by Daniels | Dennis K. |
| 38 | 3/6/96 | Letter recommending surgery for Alan W. | Dr. Appl |
| 39 | 4/18/96 | Check from Medicare including payment for services to Otto H. | Herbert A. Daniels, Kanza |
| 40 | 5/21/96 | Check from Metra Health including payment for services to Otto H. | Herbert A. Daniels, Kanza |
| 41 | 5/30/96 | Letter recommending surgery for Joseph S. | Dr. King |
| 42 | 6/7/96 | HCFA 1500 for Jeanne S. | Medicare |
| 43 | 9/4/96 | Check from Metropolitan Health Benefits Plan including payment for services for Barbara M. | Herbert A. Daniels, Kanza |

■■ The chart does not identify the nature of the fraud with regard to each mailing, but paragraph 28 of the indictment, which is included under Counts 37 through 43, incorporates by reference paragraph 5 which identifies the fraudulent scheme. For a mail fraud charge, the indictment must only provide a "fair indication of the nature or character of the scheme or artifice relied upon." *Curtis*, 506 F.2d at 992. Because paragraph 5 is incorporated, counts 37 through 43 satisfy this minimal standard. The Court therefore finds that the mail fraud charges are constitutionally sufficient.

Defendant raised nearly identical challenges to the chart format of the indictment before his first trial. The Honorable Dale E. Saffels rejected defendant's chal-

lenges on two occasions. See *United States v. Daniels,* 95 F.Supp.2d 1160, 1169 (D.Kan.2000); *United States v. Daniels,* 2000 WL 764951, at *4 (D.Kan.2000). The Court agrees substantially with the reasoning of Judge Saffels:

> The indictment, while lengthy and not laid out in normal fashion, adequately sets forth the grand jury's charges and the essential facts and general circumstances underlying them. *Radetsky,* 535 F.2d at 565. The indictment in paragraph 31 sets out the scheme to defraud in its entirety. The indictment then proceeds to state the generic language of the fraud statutes and, in chart form, identify in each count the specific factual situations at issue. As to the health care fraud counts, the chart provides the specific dates, patients, insurance companies, procedures at issue, and whether the procedures were performed. As to the mail fraud counts, the chart provides the specific dates, what was mailed, and who was the recipient. . . . The indictment, read in its entirety, is sufficient to notify defendant of the charges against him.

> Contrary to defendant's claims, the indictment contains all of the necessary elements of the offenses charged and gives enough specificity to survive a constitutional challenge. An indictment is held only to minimal constitutional standards. See *United States v. Edmonson,* 962 F.2d 1535, 1541 (10th Cir.1992) (citing *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984)).

*Daniels,* 95 F.Supp.2d at 1169. For the above reasons, the Court overrules defendant's motion to dismiss Counts 1–12, 22–36 and 37–43.

● Perjury Charges (Counts 45–47)

 Defendant argues that the three perjury counts should be dismissed be-

cause they rely on questioning that is fundamentally ambiguous. "A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *United States v. Farmer,* 137 F.3d 1265, 1269 (10th Cir.1998) (citations and quotations omitted). The question of ambiguity can be resolved as a matter of law, but "in most instances, the meaning of a prosecutor's question and the truthfulness of a defendant's answer are best left to the jury." *Id.* The Tenth Circuit has noted:

> Fundamental ambiguity is the exception, not the rule. In other words, where a prosecutor's question is only "arguably ambiguous," a defendant's understanding of the question is for the jury to resolve in the first instance. A defendant may not succeed on a claim of fundamental ambiguity by isolating a question from its context in an attempt to give it a meaning entirely different from that which it has when considered in light of the testimony as a whole. Where a defendant claims that the question is ambiguous or misunderstood, the context of the question and answer becomes critically important.

*Id.* (citations omitted).

 Count 45 charges that defendant knowingly made a false declaration at his previous trial when he testified that "he had taken 4,000 KUMC patients with him when he joined Dr. Jacquelyne Holdcraft's practice." First Superseding Indictment (Doc. # 12) ¶ 35. In particular, the indictment alleges that the following answers were false:

> QUESTION: Do you have any idea about how many patients you had while you were at KU?

ANSWER: I don't know how many I had, about 4,000 went with me when I moved.

QUESTION: When you moved to join Doctor Holdcraft?

ANSWER: Yes.

\*　　\*　　\*　　\*　　\*　　\*

QUESTION: And I think you testified last week that when you went to the Holdcraft practice you brought 4,000 patients from KU Med Center?

ANSWER: Yes.

Defendant argues that he never testified that he "took" 4000 patients "to" Dr. Holdcraft's practice and that the indictment improperly assumes that the number of patients "moving" with him equates to the number of patients "taken to" Dr. Holdcraft's practice. Defendant may be able to assert a defense at trial based on the distinction between "moving" and "taken to," but the distinction is not sufficient for the Court to find that the questions were fundamentally ambiguous, particularly in light of defendant's admission that he testified that he "brought" the patients from KU Medical Center. At most, defendant has shown that the questions are "arguably ambiguous." Defendant's understanding of the prosecutor's questions therefore is best left to the jury, which can judge defendant's statements "according to common sense standards and give[ them] their natural meaning in relation to their context." *United States v. Schafrick,* 871 F.2d 300, 304 (2d Cir.1989).

Defendant next asserts that Count 46 is fundamentally ambiguous. Count 46 charges that defendant knowingly made a false declaration at a previous court proceeding when he testified that his partnership with Dr. Holdcraft "ended amicably."

First Superseding Indictment (Doc. # 12) ¶ 38. In particular, defendant testified that "other than the fact that [Dr. Holdcraft] wanted to go at a different pace," no problem led to his leaving the partnership. Id. In contrast, defendant testified at a later court proceeding that at least two tensions led to the partnership termination including an incident regarding "stealing patients" and one involving the purchase of a computer system. Id. ¶ 39. The indictment alleges that "the two examples the defendant gave for the 'tensions' in the office did not occur, but were invented to undermine the credibility of Dr. Jacquelyne Holdcraft." Id. ¶ 40. Defendant summarily argues that the structure and content of Count 46 make it unclear what testimony the government considers perjury. From the plain text of Count 46, the government is charging that defendant's entire narrative with regard to the two examples of tensions in the office was perjurious. Defendant's narrative is quite lengthy (approximately five and one half pages of the indictment), but length alone does not make the questions or answers fundamentally ambiguous. The Court therefore overrules defendant's motion to dismiss with regard to Count 46.

Finally, defendant argues that Count 47 does not state a perjury charge. Count 47 charges that defendant knowingly made a false material declaration at his first trial when he adopted as true his prior testimony that none of his tonsillectomy patients had complained to him about loss of taste. See id. ¶ 46. After setting forth defendant's prior testimony that no tonsillectomy patients had complained to him about loss of taste, see id. ¶ 44, the indictment charges that defendant adopted as true his prior testimony in the following passage:

QUESTION: Those were your responses to those questions, correct?

ANSWER: Yes.

QUESTION: Rendered in 1995, correct?

ANSWER: I'd have to look at the date on that, please, if I may.

QUESTION: Yes, sir. September 25th through the 28th of 1995.

ANSWER: Yes, that is correct. That's the right answer.

QUESTION: Now, that wasn't true, was it?

ANSWER: It was true.

Id. ¶ 45. Defendant argues that the above questioning was fundamentally imprecise and ambiguous. The government responds that defendant clearly adopted his prior testimony when he stated "That's the right answer" and "It was true." In context, the prosecutor essentially asked defendant whether he rendered the responses on September 25 through 28 of 1995. Defendant's answer that "Yes, that is correct. That's the right answer." appears directly related to the date of his prior testimony. The prosecutor's next question "Now, that wasn't true, was it?" could reasonably be interpreted by persons of ordinary intellect as relating to the accuracy of defendant's prior responses. Although other interpretations are possible, defendant at most has shown that the questions are arguably ambiguous. Again, the Court believes that defendant's understanding of the prosecutor's questions is best left to the jury who can judge defendant's statements "according to common sense standards and give[ them] their natural meaning in relation to their context." *Schafrick*, 871 F.2d at 304.[3]

## II. Defendant's Motion For Bill Of Particulars (Doc. # 47)

A bill of particulars is not a vehicle for discovery but is a method of supplementing the indictment, when necessary, to enable the defendant to prepare his defense, avoid prejudicial surprise at trial, and avoid the risk of double jeopardy. See *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988). Although defendant is entitled to know the theory of the government's case, defendant is "not entitled to know all the evidence the government intends to produce." *Id.* at 1030. To be sufficient, an indictment must contain "the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend." *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir.1989), cert. denied, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990). An indictment which tracks the statutory language is sufficient if the statute "fully, directly, and expressly, without any uncertainty or ambiguity, sets forth all the elements necessary to constitute the offense." *United States v. Sullivan*, 919 F.2d 1403, 1411 (10th Cir.1990) (citations omitted). To establish that an indictment may be prejudicial, defendant must offer more than a generalized and conclusory statement of prejudice. See *United States v. Burger*, 773 F.Supp. 1419, 1423 (D.Kan. 1991); *United States v. Swiatek*, 632 F.Supp. 985, 987 (N.D.Ill.1986). A bill of particulars cannot save an otherwise invalid indictment, *Russell*, 369 U.S. at 770, 82 S.Ct. 1038, but "it can serve to give adequate notice for trial preparation in these circumstances" *Radetsky*, 535 F.2d at 563.

The indictment in this case presents a very close call. As explained above, the superseding indictment recites the statutory elements of health care fraud and mail fraud and is constitutionally sufficient. The chart format of the indictment,

---

3. Depending in part on the government's evidence regarding defendant's understanding of the questions, the Court may reconsider its ruling on Count 47 at the time of trial.

however, does not reveal which factual theory specified in paragraphs 17 through 19 the government will pursue with regard to each count. In light of the complexity of the case and the numerous documents involved, defendant does not have fair notice of the specific theory of fraud for each count. The Court recognizes that defendant has been made aware of the specific factual allegations against him through his first trial, discovery and/or hearings before the Court. Accordingly, defendant would not be severely prejudiced if the Court did not grant him a bill of particulars. At the same time, the superseding indictment (as presently worded) theoretically allows the government to present different evidence with regard to each count than the evidence presented at the first trial. The burden on the government to state which particular evidentiary theory or theories it is pursuing on each count is minimal. In light of the potential prejudice to defendant which would result if the government shifted its theories with regard to individual counts, the Court finds that a bill of particulars is warranted. Defendant is entitled to a bill of particulars which specifies which fraudulent patterns or practices (specified in paragraphs 17 through 19) apply to each count/patient. See *United States v. Dolan,* 120 F.3d 856, 866 (8th Cir.1997) (bill of particulars is appropriate where it does not add necessary fact or element, but merely elaborates "upon an overt act already included in the indictment").

### III. Defendant's Motion For Clarification On *Brady* Disclosure (Doc. # 48)

Defendant asks for clarification of the government's disclosure pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In particular, defendant asks for "government reports, FBI 302 reports and other investigative reports from agencies such as the Office of Inspector General, describing witness contacts and interviews." Herbert Daniels' Motion For Clarification On Brady Disclosure (Doc. # 48) filed May 18, 2001 at 1–2. The government states that it has reviewed all interview reports and that it has not found any Brady material. At oral argument, defense counsel conceded that based on the government's representation, defendant's motion is moot.

### IV. Defendant's Motion For A Summary Of Indictment

The government and defendant agree that the Court should read a summary of the indictment before voir dire. The specifics of the summary will be provided to the parties before trial.

Defendant also argues that the Court should provide only a summary of the indictment with the final instructions. He claims that the indictment should not be given to the jury because it contains confusing, irrelevant and prejudicial surplusage. A district court has discretion whether to read and/or submit a copy of the indictment to the jury. See *United States v. Klein,* 93 F.3d 698, 703 (10th Cir.1996); *United States v. Downen,* 496 F.2d 314, 320 (10th Cir.1974); *United States v. Skolek,* 474 F.2d 582, 586 (10th Cir.1973). If an indictment is read or provided to the jury, the district court should give a cautionary instruction that "it is not in evidence and is not to be treated as such." *Downen,* 496 F.2d at 320; see *Skolek,* 474 F.2d at 586. In the Tenth Circuit, it is "common practice" either to read or submit a copy of the indictment to the jury. *United States v. Scott,* 37 F.3d 1564, 1576 (10th Cir.1994), cert.

denied, 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995) & 514 U.S. 1008, 115 S.Ct. 1323 (1995).

■ Based on the number and complexity of the charges against defendant and the anticipated length of trial (approximately two months), the indictment along with the Court's instructions will provide the jury the framework necessary to weigh and analyze the evidence. See *Scott*, 37 F.3d at 1577 ("considering the number of overt acts charged and the number of defendants, it seems entirely appropriate that the court not only read the indictment to the jury but allowed the jury to have a copy during its deliberations"); *Skolek*, 474 F.2d at 586 (allowing partial copy of indictment to be taken to jury room not an abuse of discretion). Any potential prejudice to defendant can be alleviated by the Court's standard instruction, which reads substantially as follows:

> An indictment is a formal method of accusing a defendant of a crime. It is not evidence of any kind against defendant and does not create any presumption or permit any inference of guilt. It is merely a charge or accusation-nothing more and nothing less. To the charges contained in the indictment, defendant has entered a plea of "not guilty." This plea puts in issue every material element of the crimes charged and requires the United States to establish by the evidence, to your satisfaction beyond a reasonable doubt, every material allegation of the offenses charged.

See *Scott*, 37 F.3d at 1576 ("Courts have held that it is not error to read an indictment to the jury as part of a court's instructions if the jury is instructed that the indictment is not evidence.") (citing *United States v. Long*, 706 F.2d 1044, 1056 (9th Cir.1983) and *United States v. Jones*, 587 F.2d 802, 805 (5th Cir.1979) (trial court read part of indictment to jury and instructed jury to read the rest; not an abuse of discretion)). "With the admonition that the indictment is not evidence, courts seldom consider it an abuse of discretion either to read it to the jury or to allow them to have it during its deliberations." *Scott*, 37 F.3d at 1576 (citations omitted).

Defendant argues that submission of the indictment would be improper because it would place before the jury "extrinsic material that the jury should not consider." Herbert Daniels' Motion To Summarize The Indictment And To Not Submit A Copy Of The Indictment To The Jury With Final Instructions (Doc. # 52) at 4 (citing *Klein*, 93 F.3d at 702). In *Klein*, the Tenth Circuit instructed that a district court may err if it fails to redact "references to prejudicial facts that are not in evidence." *Id. Klein* certainly instructs district courts to redact unproven prejudicial allegations, but it does not advise district courts to entirely withhold the indictment from the jury. See *id.* at 703 ("when the unredacted information relates to prejudicial unproven facts such as that an alleged drug conspirator also possessed a handgun and large amounts of cash, we believe the risk of biasing the jury is great enough to require redaction"); see also *United States v. England*, 966 F.2d 403, 408 (8th Cir.) (better course to redact unproven allegations), cert. denied, 506 U.S. 1025, 113 S.Ct. 668, 121 L.Ed.2d 592 (1992). Indeed, in *Klein*, the Tenth Circuit held that the district court's submission of the entire unredacted indictment was harmless error in part because the district court instructed the jury that the indictment was not evidence. See Klein, 93 F.3d at 704; see also England, 966 F.2d at 408 (no prejudicial error in part because

district court admonished jury that allegations in indictment were not evidence). *Klein* explains that "a proper covering instruction with respect to the indictment goes a long way toward curing any potential for prejudice created by giving the indictment to the jury." *Klein*, 93 F.3d at 704. At this point, the Court need not address whether certain allegations should be stricken because it must assume that the government will be able to prove the allegations in the indictment. To the extent that the government fails to do so, defendant may move to have the unproven prejudicial allegations stricken as surplusage.

## V. Defendant's Motion To Strike Surplusage (Doc. # 46)

 Defendant asks the Court to strike numerous allegations of the indictment as surplusage. An indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). Pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, the Court may strike as surplusage allegations "not relevant to the charge at issue and inflammatory and prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir.1990), cert. denied, 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d 559, 562 n. 2 (6th Cir.) (citation omitted), cert. denied, 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989); see *United States v. Chas. Pfizer & Co.*, 217 F.Supp. 199, 201 (S.D.N.Y.1963) ("If the allegation is of matters by which the Government hopes to establish the charge, it can scarcely be called 'surplusage.' "). Courts rarely strike portions of the indictment as surplusage, see *United States v. Eisenberg*, 773 F.Supp. 662, 700 (D.N.J. 1991), and a proper instruction to the jury ordinarily can alleviate the potential prejudicial effect of contested allegations in the indictment. See *Lowther v. United States*, 455 F.2d 657, 666 (10th Cir.) ("The failure to strike certain portions of the Indictment was not prejudicial because of the Court's instructions that the Indictment was not evidence; that guilt or innocence was to be determined on the evidence; that the Government was not required to prove each aspect of the Indictment; and that a conviction could not be upheld on suspicion or conjecture."), cert. denied, 409 U.S. 887, 93 S.Ct. 114, 34 L.Ed.2d 144 (1972).

Because the relevance of an allegation is the key factor in deciding whether an allegation is surplusage, the Court overrules defendant's motion to strike without prejudice. None of the paragraphs of the indictment identified by defendant are so grossly irrelevant or prejudicial that the Court can strike them before trial. As explained above, the Court intends to wait until the end of trial to give the jury a copy of the indictment. Accordingly, to the extent the government fails to prove or establish the relevance of certain allegations, defendant may move to strike them at trial before the indictment is given to the jury.

**IT IS THEREFORE ORDERED** that Herbert Daniels' Motion To Dismiss (Doc. # 44) filed May 18, 2001 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Herbert Daniels' Motion For Bill Of Particulars With Suggestions In Support (Doc. # 47) filed May 18, 2001 be and hereby is **SUSTAINED.**

IT IS FURTHER ORDERED that Herbert Daniels' Motion For Clarification On *Brady* Disclosure (Doc. # 48) filed May 18, 2001 be and hereby is **OVERRULED as moot.**

IT IS FURTHER ORDERED that Herbert Daniels' Motion To Summarize The Indictment And To Not Submit A Copy Of The Indictment To The Jury With Final Instructions (Doc. # 52) filed June 15, 2001 be and hereby is **SUSTAINED in part** and **OVERRULED in part.** The Court intends to orally summarize the indictment at the start of trial and at the time of jury instructions, but it will provide the jury with a written copy of the indictment with the final instructions.

IT IS FURTHER ORDERED that Herbert Daniels' Motion To Strike Surplusage From The First Superseding Indictment With Suggestions In Support (Doc. # 46) filed May 18, 2001 be and hereby is **OVERRULED without prejudice.**